```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF LOUISIANA
                         ALEXANDRIA DIVISION

LEONARD LEWIS,                         CIVIL ACTION
         Plaintiff                     SECTION "P"
                                       NO. 08-CV-1151
VERSUS

ALFONZO PACHECO, et al.,               JUDGE DEE D. DRELL
         Defendants                    MAGISTRATE JUDGE JAMES D. KIRK
```

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a motion for summary judgment filed by plaintiff Leonard Lewis ("Lewis") (Doc. 20).

Lewis filed a pro se complaint pursuant to 42 U.S.C. § 1983, in forma pauperis, on August 5, 2008.  The named defendants are Alphonso Pacheco ("Pacheco") (a medical doctor at Winn Correctional Center ("WCC") in Winnfield, Louisiana), Tim Wilkinson ("Wilkinson") (warden of WCC), Pat Thomas ("Thomas") (medical director of WCC), and Corrections Corporation of America ("CCA") (owner and operator of WCC).  Lewis alleges that, while he was confined in WCC *in 2006\*\*\**, he was denied his prescribed medication (Hepsera) for his Hepatitis B, causing his hepatitis to worsen and his liver to become damaged.  Defendants answered the complaint (Doc. 15) and filed an opposition to Lewis' motion for summary judgment (Doc. 24).  Lewis filed a reply to defendants' opposition (Doc. 28).   Lewis' motion is now before the court for

consideration.

## Law and Analysis

### The Law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material".  A material fact issue exists if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.  In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Eighth Amendment and Denial of Medical Care

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  The Supreme Court defined "deliberate

indifference" as "subjective recklessness", or, in other words, a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994). Because an inadvertent failure to provide adequate medical treatment does not violate the Eighth Amendment, deliberate indifference does not include a complaint that a physician has been negligent in diagnosing or treating a medical condition, Estelle, 97 S.Ct. at 291, or a difference of medical opinion between the prison's medical staff and the inmate about what medicines or treatments the inmate should be receiving, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In order to show that his medical care violated the Eighth Amendment, an inmate must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997), citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Subjective recklessness, as used in the criminal law, is the appropriate test for deliberate indifference. Norton, 122 F.3d at 291, citing Farmer v. Brennan, 511 U.S. 825, 838-40, 114 S.Ct. 1970, 1980, 128

L.Ed.2d 811 (1994).

Although the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive *adequate* medical care.  A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Easter v. Powell, 467 F.3d 459, 463-464 (5th Cir. 2006), citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care.  Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987).

Lewis' Denial of Medical Care Claim

Lewis arrived at WCC in April 2004 with diagnoses of latent syphilis, Hodgkins' lymphoma, and hepatitis B, for which he was receiving care and treatment from oncologist and hematologist Dr. Rheinhold Munker at LSU Medical Center in Shreveport, Louisiana.  After undergoing both chemotherapy and stem cell transplants at LSU, Lewis' lymphoma eventually went into remission.

Lewis contends his hepatitis B medication was discontinued by

5

Dr. Pacheco in September 2007. Defendants admit that, because Lewis' condition was stabilized, Dr. Pacheco discontinued the Hepsera on a trial basis. The Hepsera had been prescribed by the LSU specialist, Dr. Munker. When Lewis' condition began to deteriorate again , Dr. Pacheco resumed the Hepsera. Lewis allege he suffered liver damage.

It is beyond contention that an active Hepatitis B virus is a serious medical need. Lewis alleges that Dr. Munker has treated Lewis for Hodgkins's lymphoma and chronic Hepatitis B since early 2004 and prescribed Hepsera[1] to treat Lewis' Hepatitis B virus in 2005.[2] When Lewis was transferred to WCC in April 2004, he continued to receive medical care for his Hepatitis B from Dr. Munker. Dr. Munker stated that Lewis was diagnosed with Hodgkin's Lymphoma in July 2004, Stage IV-B with liver involvement (Doc. 20, Ex. 22). Lewis reached remission with ABVD, then receved multiple cycles of ESHAP,[3] which was complicated by his chronic hepatitis B

---

[1] Hepsera is a brand name for Adefovir.

[2] Lewis also suffers from Hodgkin's lymphoma disease and latent syphilis.

[3] ABVD is a chemotherapy regimen that includes doxorubicin , bleomycin, vinblastine, and decarbazine. ESHAP is a chemotherapy regimen that includes etoposide, methylprednisolone, cytarabine and cisplatin. MEDLINEplus Health Information (a service of the U.S. National Library of Medicine and the National Institutes of Health): Lymphoma Research Foundation: Perpheral T-Cell Lymphoma*, available at* http://www.lymphoma.org/atf/cf/ %7B0363cdd6-51b5-427b-be48-e6af871acec9%7D/PTCL09.PDF.

(Doc. 20, Ex. 22). Lewis finally reached remission after an autologous stem cell transplant in March 2005 (Doc. 20, Ex. 22) for relapsed/refractory Hokdgin's lymphoma disease (Doc. 20, Ex. 2). At that time, his chronic hepatitis B had a low viral load on treatment, and he returned to WCC with instructions for follow up care (Doc. 20, Ex. 2). Lewis was discharged from LSU Health Sciences Center on June 17, 2005, with Coumadin and Hepsera (Doc. 20, Ex. 5).

On March 6, 2006, Dr. Munker noted Lewis' chronic hepatitis B with moderate viral load, and that he was taking Lamividine but should be started on Hepsera (Adefovir) with an overlap of the two medications for a few days; Dr. Munker noted a chance of eliminated HB DNA by Adefovir (Doc. 20, Ex. 7). On June 25, 2007, Dr. Munker noted that Lewis had chronic hepatitis B with a moderate viral load, continued his current medication, and ordered a return to the clinic in 3 months (Doc. 20, Ex. 19). Dr. Munker stated "substitution permitted" on Lewis' September 24, 2007, Hepsera prescription (Doc. 20, Ex. 13). On October 12, 2007 and October 23, 2007, Lewis filed out "inmate request forms" stating he had not received his medication in over a month and he was not feeling well (Doc. 20, Exs. 14, 15). The response to the second request form was that the doctor had discontinued Lewis' medications (Doc. 20, Ex. 15). That response was clarified on November 7, 2007, to indicate that Dr. Pacheco, Lewis' primary care provider, had

discontinued his medications (Doc. 20, Ex. 16). Someone also wrote that Lewis' Hepsera had been put on hold until his enzymes were rechecked (Doc. 20, Ex. 17). On November 27, 2006, Dr. Munker provided prescriptions for Baraclude, Cipro, and Motrin also, all with "substitutions permitted" (Doc. 20, Ex. 8).

Lewis contends and defendants admit that, on September 14, 2007, Dr. Pacheco discontinued Lewis' Hepsera medication (Doc. 20, Ex. 25). Dr. Pacheco stated that Lewis was asymptomatic at that time (Doc. 20, Ex. 25), so he considered it reasonable to discontinue Lewis' Hepatitis B medication and monitor him (Doc. 24, Ex. 2). In December 2007, Dr. Munker wrote Lewis another prescription for Hepsera (Doc. 20, Ex. 20). Dr. Pacheco states in his affidavit that Hepsera was re-ordered in January 2008 because Lewis had an elevated viral load (Doc. 20, Ex. 1). In April 2008, Dr. Munker found Lewis had slight neutropenia and a high hepatitis B viral load; Nurse Kathy Richardson, told Dr. Munker that Lewis had been noncompliant with taking his Adefovir (Doc. 20, Ex. 22; Doc. 24 - Brief, Ex. 1, Ex. 2-No. 18). Lewis' scheduled follow-up visit to LSU-Shreveport in June 2, 2008 was cancelled (Doc. 20, Ex. 21; Doc. 24, Ex. 2, No. 16) and Dr. Munker contacted them to have it rescheduled, explaining Lewis' past and present health problems and the need for a plan for further care (Doc. 20, Ex. 22)."

Dr. Pacheco's decision to ignore the specialist's orders indicates possible deliberate indifference. Gil v. Reed, 381 F.3d

649, 6620664 (7th Cir. 2004)(reasonable fact-finder could infer deliberate indifference where prison doctor canceled specialist's prescriptions and substituted medication which specialist had specifically warned was dangerous for persons with plaintiff's condition"). Also, Jones v. Simek, 193 F.3d 485, 491 (7th Cir. 1999)(allegations that prison doctor refused to provide the specific treatments ordered by specialists alleges facts sufficient to survive a motion for summary judgment). Dr. Pacheco specializes in general preventive medicine. Dr. Munker specializes in hematology and oncology. Although defendants contend Dr. Pacheco was Lewis' primary care physician for his hepatitis and Dr. Munker was the primary care physician for his lymphoma, Dr. Munker has continuously treated both Lewis' lymphoma and hepatitis since 2003, prescribed the medications, and coordinated the treatments (which included chemotherapy).

Dr. Pacheco and Pat Thomas both state in their responses to Lewis' requests for admissions that Dr. Munker "recommend[ed]" Hepsera for treatment of plaintiff's Hepatitis B (Doc. 20, Ex.). Use of the term "recommended" is a mischaracterization of Dr. Munker's *prescription* of Hepsera for Lewis (and "recommended" was not the term used by Lewis in his request for admissions). Dr. Munker was a specialist and was one of Lewis' treating physicians-he had been since 2004 and continued to be while Lewis was confined in WCC.

Pat Thomas further states in her answers to Lewis' for requests for admissions that Lewis' Hepsera was discontinued on September 14, 2007 in accordance with an order from Dr. Pacheco, and that when Dr. Munker called to inquire why it had been discontinued, he was told that Lewis had been "noncompliant" with his medications (Doc. 20, Ex.).  Pat Thomas refused to admit that Lewis had made numerous sick calls and requests for his Hepsera (Doc. 20, Ex.); however, Lewis submitted documented sick calls and requests for Hepsera in the record, from October 16, 2007 through November 6, 2007 (Doc. 20, Exs. 14, 15, 16).  Moreover, defendants have not pointed to any evidence that shows Lewis refused to take his medication, and Lewis' repeated requests for his medication indicate he was not "noncompliant."  In fact, defendants explain in their brief (Doc. 24, p. 8) that Lewis' Baraclude was discontinued for noncompliance, but that his Hepsera was discontinued because "the side-effect issues were serious considerations for the prolonged use of Hepsera."  Defendants explain that, when Dr. Pacheco felt like Mr. Lewis had significantly improved and appeared to be asymptomatic, Dr. Pacheco believed it reasonable to discontinue the use of the Hepsera on a test-basis only (Doc. 24).

Defendants advance potentially serious medication side effects as a possible reason for Dr. Pacheco having discontinued Lewis' Hepsera.  Dr. Pacheco states in his affidavit that Hepsera can cause toxicity to the kidneys and liver, and lactic acidosis, and

that stopping the use or Hepsera can also be serious because it can cause the Hepatitis B to become acutely exacerbated (Doc. 24, Ex. 2).[4]  Dr. Pacheco further points out that Dr. Rodriguez (his predecessor at WCC) also discontinued Lewis' Hepsera in July 2005, then resumed it in November 2005 following a hepatitis profile and liver function test (Doc. 24, Ex. 2).  Finally, Dr. Pacheco points out that Lewis has received extensive treatment for his cancer and Hepatitis B at WCC, LSU, and other prisons (Doc. 24, Ex. 2).

Therefore, there are genuine issues of material fact as to whether Dr. Pacheco should have consulted with Dr. Munker before cancelling Lewis' Hepsera, whether Dr. Pacheco's temporary cancellation of Lewis' Hepsera was the exercise of sound medical judgment, and the precise nature of the adverse effects on Lewis due to the temporary discontinuation of his Hepsera.  Moreover, although Lewis contends he has suffered more liver damage from the discontinuation of his medication, there is no medical evidence in the record at this time to support that claim, or to show the precise nature and extent of damage and whether it was temporary or permanent.

Since there are genuine issues of material fact which preclude a summary judgment in Lewis' favor, Lewis' motion for summary judgment should be denied.

---

[4] Defendants failed to filed two pages of Dr. Pacheco's affidavit (Doc. Ex. ).

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Lewis' motion for summary judgment be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 26th day of January, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE